[Cite as *State v. Redmond*, 2024-Ohio-3404.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                       No. 113556

    v.                           :

JONATHAN REDMOND,                       :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 5, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-655230-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah E. Hutnik, Assistant Prosecuting Attorney, *for appellee.*

Goldberg Dowell & Associates and John J. Dowell, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} This appeal is before the court on the accelerated docket pursuant to App.R. 11.1 and Loc.App.R. 11.1.  The purpose of an accelerated appeal is to allow an appellate court to render a brief and conclusory decision.  *E.g., Univ. Hts. v.*

*Johanan*, 2022-Ohio-2578, ¶ 1 (8th Dist.); *State v. Trone*, 2020-Ohio-384, ¶ 1 (8th Dist.), citing *State v. Priest*, 2014-Ohio-1735, ¶ 1 (8th Dist.); *see also* App.R. 11.1(E)

{¶ 2} Defendant-appellant Jonathan Redmond appeals an order denying, without a hearing, his petition to vacate or set aside judgment of conviction or sentence pursuant to R.C. 2953.21. For the reasons that follow, we affirm.

## I.   Factual Background and Procedural History[1]

{¶ 3} On February 12, 2021, a Cuyahoga County Grand Jury returned an indictment charging Redmond with five counts of rape and one count of kidnapping. All the counts related to the same victim, 16-year-old C.M., and were alleged to have been committed on the same date.

{¶ 4} Redmond waived his right to a jury trial on June 30, 2021; he waived a jury trial again on November 15, 2021. After a two-day bench trial, during which C.M. and other witnesses testified for the State, Redmond was found guilty on all counts. He was sentenced to four years in prison.

{¶ 5} Redmond filed a direct appeal to this court, arguing that the convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

---

[1] While we summarize relevant facts in this opinion, we note that a more detailed statement of the factual and procedural history leading to this appeal can be found in this court's opinion from Redmond's direct appeal: *State v. Redmond*, 2022-Ohio-3734 (8th Dist.).

{¶ 6} Redmond also argued that he received ineffective assistance of counsel, asserting that his trial counsel, among other things, failed to effectively cross-examine C.M. during the trial. This court described that argument as follows:

> At the close of the state's case in chief, Redmond moved for judgment of acquittal pursuant to Crim.R. 29, arguing that in her "taped statement" to [a detective], C.M. reported that Redmond had wanted to record their sex acts for the internet, and C.M. omitted this statement from her testimony. . . . Redmond argued that this inconsistency undermined C.M.'s credibility. The state responded that C.M. was never asked about the alleged inconsistency. The trial court denied the motion, as well as Redmond's request to consider C.M.'s recorded statement, because C.M.'s recorded statement to [the detective] was not admitted into evidence.
>
> . . .
>
> [On appeal,] Redmond . . . argues that defense counsel failed to impeach C.M. by statements she allegedly made to [the detective] that Redmond wanted to record their sex acts for the internet. The state acknowledges that neither it nor defense counsel asked C.M. about her statement to [the detective] . . . .

*State v. Redmond*, 2022-Ohio-3734, ¶ 16, 44 (8th Dist.).

{¶ 7} Finally, he argued that the trial court failed to confirm that Redmond fully understood all the rights he would be waiving when he waived his right to a jury trial.

{¶ 8} This court overruled Redmond's assignments of error and affirmed his convictions. *Redmond* at ¶ 52.

{¶ 9} With respect to his ineffective-assistance argument, this court reasoned that introducing the statement during cross-examination of C.M. would not likely have changed the outcome of the trial because the statement "was already before the court in [an admitted exhibit] and through [a medical doctor's] testimony

that during [an appointment with C.M.], C.M. said that Redmond was 'trying to get her to perform sexual acts for the Internet.'" *Id.* at ¶ 45. This court further reasoned that "the proper vehicle for raising the claim is a petition for postconviction relief, not a direct appeal[,]" because it was based on evidence outside the record. *Id.*

{¶ 10} With respect to his jury-waiver argument, this court concluded that Redmond's jury waiver was voluntarily, knowingly and intelligently made. This court reasoned as follows:

> Here, at two separate jury-waiver hearings, the first held on June 30, 2021, and the second held directly before trial on November 15, 2021, the trial court reviewed Redmond's right to a jury trial with him and confirmed in the presence of counsel that he had consulted with counsel, understood his rights, and wished to waive his right to a jury. The trial court stated on the record at each hearing that Redmond executed a written jury waiver in the trial court's presence and the waiver form was thereafter filed with the clerk's office.

*Redmond* at ¶ 50.

{¶ 11} On January 26, 2023, Redmond filed a petition for postconviction relief, arguing that his conviction and sentence should be vacated pursuant to R.C. 2953.21(C). He asserted that the conviction and sentence were void because he received constitutionally ineffective assistance of counsel during his trial. Specifically, Redmond argued that (1) counsel failed to use C.M.'s recorded statements to the detective during counsel's cross-examination of C.M., (2) failed to present other evidence obtained by Redmond's family, (3) improperly advised Redmond to waive a jury trial based on "counsel's relationship with the [trial court judge]" and (4) improperly prevented Mr. Redmond from testifying at trial.

{¶ 12} The petition attached a portion of trial transcript and affidavits from Redmond and his mother, Beth Breno.

{¶ 13} Redmond averred that he waived a jury trial at the "urging" of his trial counsel, who "made me feel like I would win my case because [counsel] and [the trial-court judge] went to high school together, were old drinking buddies and their relationship would have a positive influence on my trial and sentencing."

{¶ 14} Redmond also averred that counsel "did not seem prepared for trial" and, on one occasion, "left to handle another case while on break" and was absent "for much longer than the break was supposed to be."

{¶ 15} Finally, Redmond averred that he wanted to testify but counsel did not permit him to testify after his sister expressed reservations about him testifying.

{¶ 16} Breno averred that counsel "assured [Redmond] and I that there would be no problem with the case because [counsel] and the judge are old friends and used to be drinking buddies." She averred that counsel "did not use any of the evidence we gathered to support [Redmond] and to discredit the victim." Finally, she averred that Redmond "was adamant about testifying but [counsel] said no after [Redmond's] sister said he shouldn't."

{¶ 17} The State opposed Redmond's petition. On December 14, 2023, the trial court denied the motion, issuing findings of fact and conclusions of law. The court concluded that the affidavits attached the petition were not credible, reasoning that they were "self-serving and contradicted by the record." The court further reasoned that in the direct appeal this court "denied Redmond's claim that trial

counsel was ineffective for failing to impeach C.M. using statements made to police" and "Redmond did not submit any additional evidence in support of this claim." Finally, the court held that Redmond failed to present sufficient evidence to be entitled to a hearing on the petition.

{¶ 18} Redmond appealed, raising the following assignment of error for review:

> The trial court erred in denying Appellant's postconviction-relief petition where he presented sufficient evidence dehors the record to merit an evidentiary hearing.

## II.  Law and Analysis

{¶ 19} Pursuant to R.C. 2953.21(A)(1)(a)(i), a person who has been convicted of a criminal offense and who "claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States," may file a petition in the court that imposed sentence, asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. Such a petition is a civil collateral attack on a criminal judgment, through which the petitioner "may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting the issues is not contained in the record of the petitioner's criminal conviction." *State v. Fields*, 2023-Ohio-4543, ¶ 10 (8th Dist.), citing *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999); *see also* R.C. 2953.21(A)(1)(b) (allowing a petitioner to file a supporting affidavit and other documentary evidence in support of the claim for relief).

{¶ 20} Before granting a hearing on a timely filed motion for postconviction relief, the trial court must consider the petition, its supporting affidavits and documentary evidence, as well as "all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript," and must "determine whether there are substantive grounds for relief." R.C. 2953.21(D).

{¶ 21} "If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition. If the record does not on its face disprove the petitioner's claim, then the court is required to 'proceed to a prompt hearing on the issues.'" (Citations omitted.) *State v. Bunch*, 171 Ohio St.3d 775, ¶ 24 (2022), citing R.C. 2953.21(D) and (E) and quoting R.C. 2953.21(F).

{¶ 22} Here, Redmond asserted that his convictions were void or voidable based on a denial of his constitutional right to the effective assistance of counsel.

{¶ 23} The trial court dismissed the petition without holding a hearing.

{¶ 24} A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). As a general matter, to establish ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 687–688, 694;

*State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 25} In Ohio, a properly licensed attorney is presumed to be competent. *State v. Black*, 2019-Ohio-4977, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). Because there are "countless ways to provide effective assistance in any given case," a court must give great deference to counsel's performance and "indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland* at 689; *see also State v. Powell*, 2019-Ohio-4345, ¶ 69 (8th Dist.) ("'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"), quoting *State v. Pawlak*, 2014-Ohio-2175, ¶ 69 (8th Dist.).

{¶ 26} We review an order granting or denying a postconviction petition filed pursuant to R.C. 2953.21 for an abuse of discretion and we will not overrule any finding made by the trial court that is supported by competent and credible evidence. *See State v. Gondor*, 2006-Ohio-6679, ¶ 58. Because we are examining Redmond's ineffective-assistance claim as it relates to a decision whether to grant a hearing on a postconviction petition, the petition need not definitively establish counsel's deficiency or whether Redmond was prejudiced by it. *See Bunch* at ¶ 27. Instead, to merit a hearing, the petition must have raised "a triable issue of fact,

supported by evidence outside the record, whether his trial counsel was deficient and whether that deficiency prejudiced him." *See id.* at ¶ 37.

{¶ 27} A court abuses its discretion "when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19; *see also Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35 (describing the "common understanding of what constitutes an abuse of discretion" as "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority"). A decision is an abuse of discretion when it is unreasonable, arbitrary or unconscionable. *See, e.g.*, *State v. Brusiter*, 2023-Ohio-3794, ¶ 10 (8th Dist.); *State v. McAlpin*, 2023-Ohio-4794, ¶ 30 (8th Dist.); *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A decision is "unreasonable" "'if there is no sound reasoning process that would support that decision.'" *State v. Ford*, 2019-Ohio-4539, ¶ 106, quoting *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). An "arbitrary" decision is "made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* (10th Ed. 2014). When applying an abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court. *State v. McFarland*, 2022-Ohio-4638, ¶ 21 (8th Dist.).

{¶ 28} Here, we find no abuse of discretion in the trial court's denial of Redmond's motion. Several of the claimed bases for the motion were not supported

by any evidence dehors the record. At least one claim was flatly contradicted by the record.

{¶ 29} Further, we cannot find that the trial court abused its discretion when it found the affidavits attached to the petition were not credible.

{¶ 30} With respect to Redmond's claim that his trial counsel failed to effectively cross-examine the victim with a prior inconsistent statement, Redmond failed to support that claim with any evidence outside the record. He failed to present any additional evidence documenting what he characterized as the prior, inconsistent statement. Instead, he merely referred this court to a portion of the trial transcript in which the statement was discussed during the trial. In reviewing a postconviction-relief petition that raises a claim of ineffective assistance of counsel, this court considers whether "the petitioner introduced competent evidence of ineffective assistance *that was not included in the trial record.*" (Emphasis added.) *State v. Blanton*, 2022-Ohio-3985, ¶ 33. As to Redmond's claim about the effectiveness of the cross-examination, he failed to meet this initial burden. *See also State v. Robinson*, 2021-Ohio-3206, ¶ 18 (8th Dist.) ("Issues properly raised in a petition for postconviction relief are those that could not have been raised on direct appeal because the evidence supporting such issues is outside the record.").

{¶ 31} Similarly, with respect to Redmond's claim that his trial counsel failed to use Redmond's "notes and questions" written during the trial and failed to use evidence gathered by Redmond's family, Redmond again failed to include evidence

outside the record establishing what these notes were or what evidence he wishes had been mustered on his behalf. As a result, even if the averments included with the petition were to be believed, they would not on their own establish that Redmond's trial counsel "substantially violated at least one of [the] essential duties to his client" or that "said violation was prejudicial." *See Blanton* at ¶ 31. Redmond thus failed to establish that he was entitled to a hearing on these claims, either.

{¶ 32} Two of Redmond's claims were supported with specific evidence outside the record, in the form of averments about out-of-court conversations between Redmond, Redmond's family and his trial counsel. First, Redmond claimed that counsel improperly promised a favorable result from a bench trial because of counsel's relationship with the trial court judge. Second, Redmond claimed that his trial counsel did not allow Redmond to testify, despite Redmond's desire to do so. The first claim is flatly contradicted by the record. As for the second, we cannot find an abuse of discretion with respect to the trial court's determination that the claim was not supported by credible evidence.

{¶ 33} With respect to alleged pressure exerted on Redmond to secure a waiver of a jury trial, Redmond twice confirmed to the trial court on the record that no threats or promises had been made to induce his waiver of that right. On both June 30 and November 30, 2021, Redmond confirmed this. Therefore, the record on its face contradicts Redmond's claim that his waiver was less than knowing, intelligent or voluntary.

{¶ 34} The claim with respect to Redmond's trial testimony presents a closer call, at least as to whether the petition merited a hearing. Redmond and his mother both averred that there was an out-of-court conversation between Redmond, his family and counsel regarding Redmond's desire to testify on his own behalf. The affidavits stated that Redmond wanted to testify but that counsel "said no" and that "I wasn't going to testify." Redmond averred that "[t]his was not my choice."

{¶ 35} A defendant's right to testify in a criminal trial is a fundamental and personal constitutional right, waivable only by the accused. *E.g.*, *State v. Vaughn*, 2006-Ohio-6577, ¶ 32 (8th Dist.). A defendant's claim that he "wished to testify but was denied the opportunity to do so" may, under some circumstances, be cognizable in a postconviction-relief petition. *See State v. Fry*, 2012-Ohio-2602, ¶ 38 (9th Dist.).

{¶ 36} Here, though, the trial court found that the evidence underlying Redmond's claim — affidavits executed by Redmond and his mother — were not credible. *Compare Fry*, 2012-Ohio-2602 at ¶ 38 (evidence included notes made by the petitioner's attorney that supported his claim). After careful consideration, we cannot say that the trial court's finding was an abuse of discretion.

{¶ 37} A trial court "may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant." *State v. Calhoun*, 86 Ohio St.3d 279, 284 (1999). "Generally, self-serving affidavits submitted by a defendant in support of his or her claim for postconviction relief are insufficient to trigger the

right to a hearing or to justify granting the petition . . . ." *State v. Osborn*, 2019-Ohio-2325, ¶ 25 (8th Dist.). In assessing an affidavit's credibility, the Ohio Supreme Court provided the following relevant factors to be considered:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

*Calhoun* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 745–756 (1st Dist. 1994).

{¶ 38} Here, the judge reviewing the postconviction petition also presided at the trial. The judge had the opportunity to observe the conduct of defense counsel at trial and the in-court circumstances of the defense's decision to rest without presenting witnesses. The affidavits submitted with the petition were executed by Redmond and his mother, who are both clearly interested in the success of the petitioner's efforts. The format, style and language of the affidavits are similar and both affidavits were executed by the same notary. And, as discussed above, the affidavits contradict the record with respect to alleged promises made by counsel to secure Redmond's waiver of a jury trial.

{¶ 39} Under these circumstances, and where the record reveals that the defense rested without presenting witnesses — without protest by Redmond — we cannot say that the trial court abused its discretion in determining that the self-

serving affidavits attached to the postconviction petition were not credible. *See Osborn* at ¶ 27; *State v. Wilson*, 2012-Ohio-4065, ¶ 7 (8th Dist.) ("A trial court may discount self-serving affidavits from the petitioner or his family members."); *State v. Harris*, 2020-Ohio-5425, ¶ 16 (8th Dist.) ("A defendant's silence in the face of his attorney's decision not to call him as a witness effectively waives the right to testify on his own behalf.").

{¶ 40} Because Redmond's petition did not raise a triable issue of fact, supported by credible evidence outside the record, as to whether his trial counsel was deficient and whether that deficiency prejudiced him, it was not an abuse of discretion for the trial court to deny the petition without a hearing.

{¶ 41} We overrule Redmond's assignment of error.

## III. Conclusion

{¶ 42} Having overruled Redmond's sole assignment of error for the reasons stated above, we affirm the judgment.

The court finds there were reasonable grounds for this appeal.

It is ordered that the appellee recover from the appellant the costs herein taxed.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR